McCleskey v. CWG Plastering, LLC Thank you, Your Honor. Good morning. My name is Donald Schwartz, and I'm with the law firm Arnold and Cajun in Chicago, Counsel for Plaintiff Appellants, Mark McCleskey, and the Indiana State Council of Plasters and Cement Masons, Pension and Welfare Funds. The issue before the court is very straightforward. It's whether the trial court, the district court, properly entered summary judgments against plaintiffs on their alter ego and successorship claims under ERISA. There are three bases that we would posit for reversal of the court's decision. One, the court improperly weighed the evidence on summary judgment contrary to the proper standard. Number two, the court failed to address plaintiff's uncontroverted evidence. And number three, the court simply failed to apply the correct alter ego standard and legal standard in making its decision. Now, are the funds pursuing ongoing contributions from CWG, or is this all? No, there are two theories, Your Honor. Successorship imposes a liability on the successor company for the preexisting debt. Alter ego analysis, which is why it's an enhanced analysis with respect to intent to evade a collective bargaining agreement, says that the new company is really tantamount to the old company, and therefore still bound to that collective bargaining agreement. So, to answer your question directly, is that if we are successful, we would go back and go after CWG for the benefits not paid for people performing what we would deem to be bargaining unit work since the last audit of Giannino. Okay. Yeah. So, contrary to the district court's ruling, Your Honor, this matter actually presents a hallmark alter ego case. Counsel, when you say that, what law are you applying? It's federal common law of alter ego analysis, Your Honor. And why? Because… As Justice Holmes said, common law is not a brooding omnipresence in the sky. It doesn't come from nowhere. Your Honor, there are hundreds… In a case under the federal environmental laws, the Supreme Court pretty broadly suggested that the relation between corporations depends on state law. And if state law supplies the ground of decision, we'd also need to figure out which state. Your Honor, this is an ERISA-based action brought by the funds… Look, Best Foods was a case under federal environmental law. The fact that this is a case under another federal law doesn't mean that we just make things up. Normally, the relation about which corporation is liable for what other corporation's debts or contracts is a clean question of state law. You need to give a reason why that should be different. And if it's not, as footnote 9 in Best Foods says, you need to tell us which state law supplies the rule of decision. There is no state law, Your Honor. This is strictly a matter of federal law. Well, there is state law. I mean, actually, there's some bizarre things about state law here because we have Missouri involved. We have Indiana involved. For some reason, this case is being pursued in Indiana. Let me explain that, Your Honor. The funds are based in Indianapolis, Indiana. The company is based in St. Louis, Missouri. There is a local in St. Louis, Missouri whose collective bargaining agreement says that the funds, when you're a signatory contractor, you pay benefits to the Indiana State Council of Plasters and Cement Masons. It's a multi-state fund is what it is. Multi-state. Okay? And, of course, Indiana is under the Seventh Circuit, so that's how we got here. All right. So, in other words, it could… I mean, Indiana, of course, has a law of corporations. It has a law that we deal with alter ego. With all due respect… But did anybody raise this anywhere? Yeah, the trial court rejected the state court. You know, there are thousands of alter ego cases all brought under federal law. That may be. I'm trying to tie up the point that Judge Easterbrook was making because choice of law, like many, many things in litigation, is a waivable subject. And so if neither side raised any objection to the approach that the district court was taking, it may be that although there's an interesting issue about what state law ultimately would have been, it's conceivable that's been forfeited at a minimum. And you're going forward on the basis of… Federal law. Federal law, ERISA being an area where there is a lot of federal common law. Yes. They did raise the issue of piercing the corporate bail, but from our perspective, that's irrelevant to this. Did they say that, you know, Missouri forbids piercing, but somebody else would allow it? Or would they… I don't… I don't remember that there was any issue raised by anybody on this point. No. With all due respect, Your Honor, I just think that there are, I don't think there are, there's hundreds, if not thousands of alter ego cases all brought under federal… And there may not be any reason to think that whatever you're doing under federal law is particularly different from what either of the two states would do. Well, I would say that piercing, I mean, excuse me, the alter ego analysis under ERISA is a loosened concept vis-à-vis how it is generally applied in state law. And I'd like to address it, if I could address that point. Okay. Go ahead. That's fine. Okay. So, with respect to the alter ego analysis, the Court failed to address the most important issue, which is the intent to evade a collective bargaining agreement. That's essentially the essence of the alter ego analysis. Matter of fact, the case we cite, TAS, states specifically, essential to the application of the alter ego doctrine is a finding of a disguised continuance of a former business entity or an attempt to avoid the obligation of a collective bargaining agreement. And so, on lawful motive, it's critical. So if we just look at what happened in this particular case, Wally Giannino is a sole proprietorship who has a collective bargaining agreement with St. Louis Plaster's Local No. 3, which requires contributions to the Indiana State Council of Plaster's Masons Funds that I represent. So that's a little convoluted, but that's how we got here. His son works for him for 15 years. July 2012, the plaintiffs get a judgment against Wally for almost $200,000. The next day, his son goes into business. If there's any clearer case for disguised continuation in an effort to evade a collective bargaining agreement, I haven't seen it. And I've tried three or four of these cases just in the last five years, Your Honor. This is the most egregious set of facts with respect to evasion of a collective bargaining agreement that I've been exposed to. In fact, in this particular case, Your Honor, the court didn't even address intent to evade. And additionally in this case, what's very egregious is that for the first time, and I've been doing this for 30 years, I have direct evidence of intent to evade. When James Gildahouse, an employee of Giannino, is transferred to CWG, what is said by the owner of CWG? It's not, my father is sick, like he says. He says to Mr. Gildahouse, while he's being sued, I'm going into business. That's direct evidence in July of 2012 of the creation of CWG as an intent to evade the collective bargaining agreement, and in fact a $200,000 judgment against his own father. But additionally, the timing of the facts in this case, Your Honor, are unmistakable in creating intent to evade. As I just said, Wally has a collective bargaining agreement. July 27, 2012, the magistrate judge in the Southern District of Indiana enters judgment for $200,000. That very day, the same day, Wally and his son, his employee, meet with HBD, a general contractor that Giannino is already working for, and transfers the job to Kurt, his son, under a new name, like a phoenix. Two weeks later, the district court confirms that judgment. That same day is the first day CWG is incorporated. The same employees are transferred from Giannino to CWG. The same equipment is used. Did we know the equipment was leased, but do we know that those leases are fair market value? Your Honor, the only evidence in the record with respect to the truck, it was a straw purchase. Wally Giannino owns a truck, and it's a very tiny company, only three employees. His only real asset is a truck. He owns a truck. He sells it to a Lewis brand, his buddy. The same day, Lewis brand leases it to CWG. It's another manifestation of the intent to evade the collective bargaining agreement. We don't know. There's nothing in the record as far as how much he paid, under what circumstances. But with respect to alter ego analysis, it's the same equipment used by the first company and by the second company. It's a straw purchase that was manifesting, essentially, another intent to evade. Wally also creates a company called Giannino and Sons, immediately upon the judgment being entered, so that he can circumvent the judgment and try to collect whatever other standard receivables there are through this other entity. Now, it wasn't successful, but it manifests, again, the intent. Of course, we also have the statement by Kurt to his employee that the reason for the creation of the new company is the judgment against his father or the litigation against his father. Okay. I'm just going to warn you, if you want to save rebuttal time, this would be a good time to do it. I do want to just say, Your Honor, in addition to intent to evade, the other alter ego factors are also present here. We've got continuity of operations because you've got to transfer the job, to transfer the employees, to transfer the equipment, the taking of $28,000. The trial court says that when Kurt invested $5,000, that was really how the company was incorporated, but that's not true. They took $28,800 for work performed by Giannino. The money was transferred to CWG, mysteriously, again, to avoid the contract, but that's how the company was really incorporated, and it was funded. So you've got common continuity of employees. You've got continuity of operations, continuity of management. The court mysteriously says that it was fortuitous that Wally was able to procure this Donner Street job, but that wasn't fortuitous. It was because Wally continued to be involved and continued to solicit business on behalf of his son's company. So all these, and you have, again, you have, so, again, I'll reserve a minute if I can. I'll have to see, but if Mr. Pulaski needs a little bit more, I'll give you a moment. All right. Thank you very much. Thank you. Mr. Pulaski. Thank you. May it please the court. What's interesting is my opponent has essentially tried to argue federal common law, and I think that the court was right to do it. And have you ever argued anything otherwise? No. I do believe that the trial court analysis. Well, there is a problem. The Supreme Court said in Kamen against Kemper Financial that federal courts should not just apply federal common law because the parties agree to it. They have to decide that federal common law is right, although there is a footnote in Kamen saying, well, maybe if the court is really determined it can make this clear and then announce that its decision has no effect whatsoever because, of course, there is no federal common law. Peacock against Thomas holds in an ERISA case that relations among different entities about who is liable for an ERISA debt is resolved by state law. No one has paid any attention to Peacock in this case or to Best Foods. I have no idea whether we are supposed to apply federal common law and hope that the justices accept that we are using the reserve power in Kamen or try to figure out what state law governs. And to what extent it may or may not differ from. Because frequently we are actually one country and oftentimes state laws are relatively harmonious. And frankly, my position is I don't think it's going to make any difference whether it's Indiana law or Missouri law. Here's what worries me about your position. I looked at the points that the district court judge ticked off. Made about eight points as to why he thought there were significant differences. But this is at summary judgment. And at least some of them really strike me as resolving questions of fact. So, for example, when he decides that the reason CWG received a contract that Giannino had had before was because of the experience with Curt, not because of some perceived obligation or continuity, that's a disputed issue of fact. Why this happened isn't something you can just stare at the words on the page and figure out. I also am concerned at his finding that the fact that another contract went CWG's way was more fortuitous than evidence of continuity of operations says who? I mean, you know, there's a lot of evidence that it has everything to do with continuity of operations. Maybe that would be believed by a jury. Maybe it wouldn't. Maybe a jury would just think these things were falling in CWG's lap. I don't know, but I'm concerned about these statements as resolving too much. And I think that's a fair question. My response to that would be, first and foremost, in terms of the relative duties of the parties on summary judgment, that it's the obligation of the plaintiff on plaintiff's motion for summary judgment to put forth a suggestion in the record of sufficient facts averred. Plaintiff is not asking us to reverse the denial of his motion for summary judgment. You're the moving party. It's your burden we're talking about here. Right. And so what I'm trying to get to circuitously is the only evidence that the trial court used that benefited the defendant is the affidavit of my client that I filed, which had about six salient points, and even assumed that all of the facts that were alleged by the union were all proven. And essentially what the court determined, based upon all of that beneficial construction, is there still wasn't enough evidence in the record to support the conclusion. So could you address, I think it's called the LJPP job, the $28,000 payment for work done by Mr. Giannino Sr. that wound up being paid to CWG? Yeah. My recollection of the facts is completely different than counsel's recollection. But you didn't support your, I mean, you assert a lot of things, but certainly in the lower court, you didn't provide evidence to back it up. The evidence, Your Honor, was provided by the plaintiffs themselves and the exhibits that they filed with their motion. For example, the fact that CWG is a separate legal entity. That doesn't mean anything. That's just the starting point. We know it's a separate entity. We're trying to figure out the relation between that entity and the earlier entity. Otherwise, we wouldn't even have cases that deal with alter egos or successor corporations or piercing veils or all the rest of it. You always start with at least two nominally separate entities. Right. So I just don't, maybe we should answer Judge Hamilton's question in a little more detail because when you look at same people, same business, same equipment, basically the same roles, it makes it look like these are really the same company, same family. If I could push back on that just a little bit, Your Honor. I think what there isn't the same management. Walter Genino, the father, essentially has not worked for the company for about a year now. Well, there's evidence in the record to suggest that he was doing more with CWG than you say. So, again, this is evidence. Maybe it's believed, maybe it isn't, but there is evidence that he takes a more active role than Kurt's affidavits indicate. I think that there is. Why does that help you? I'm surprised. No, I don't think it does help me. But I don't think at the end of the day that it's legally sufficient to warrant a trial, a jury trial on the issue. Why not? I mean, you have all of these facts. I mean, you can pick at each one, I suppose. These are little companies. Genino Plastering has four workers. CWG has three if you don't count Wally, but Wally is doing some things with CWG, with or without pay. It's the same people, and it's the same business, and CWG takes over at least some contracts. I don't see any evidence in the record from you to say, oh, well, they took over four or five contracts or eight contracts, but there were 35 other contracts off there that were completely different. There's nothing like that in the record. And I think that's fair. I mean, clearly, Curt Giannino is the sole owner, operator, manager, controls the job of his company. That's not true for Walter Giannino's sole proprietorship. And so you have different control. You have completely different ownership, and there's not one scintilla of evidence that suggests that Walter Giannino drives any profit out of work that's done by CWG. So to me, although the case law doesn't do it, I think that those are probably the more compelling aspects of piercing a corporate veil or finding an alter ego is that, in essence, some sort of fraud has been perpetrated. I don't think that there's sufficient evidence of any kind of fraud here. You don't think a jury could look at the fact that the minute this judgment is entered, Giannino plastering goes up in smoke and CWG seamlessly takes over people. One pay period, the paycheck is from Giannino plastering. The next pay period, the paycheck is from CWG without missing a beat, basically. And some clients don't even know that they're working with a different company. This strikes me as the kind of evidence somebody might look at and say these are really just one and the same enterprise. The undisputed facts on the record before the trial court is that Kurt Giannino used his own $5,000 to start this company. I'm looking at plaintiff's appendix, pages 382, 383, 384, which goes through in fairly close detail this transfer of the LJPP contract where the work is getting done by the contract is originally assigned to Giannino Sr. Work begins long before CWG is formed and payments wind up being made only to CWG. You're saying you don't recall the evidence that way. It looks like the evidence is there and you all didn't actually even dispute it. You said you don't remember it or you don't have records of this, but that's not how you win summary judgment anyway. What I would say is my recollection of the record is that there were facts that probably went on both sides of that issue. And yes, on summary judgment, the plaintiffs are entitled to all favorable inferences from the facts of record. I still contend that the fact that there's no evidence that Walter Giannino had any profit other than the one instance that you talked about, there's hundreds of other jobs that take place after that. There's no evidence in the record of any of that. And you were seeking summary judgment. He doesn't have to profit. The argument is that the debt that he incurred is going unpaid by reason of the transfer of the business to his son. I did want to address one other issue, which is the nature of the work is not the same. Walter Giannino, the father, does EFIS type work, which is a commercial application. How would the work be different if there is evidence that CWG just took over and finished existing contracts? There's some degree of overlap, but the continuum of work that they do is different. Well, one of the reasons why I asked the choice of law question is that I could easily imagine a rule under which a firm that takes over a debtor's contracts is liable to the creditors for any profits it makes on those contracts, but not liable for other profits on new and different business. The parties seem to have argued this as an all or none case. Either CWG is liable for the whole debt or it's liable for none of the debt. I don't know whether federal law or any particular state law would distinguish between debts in the way I've just given. Nobody seems to have thought about it. All right. Well, I've given you a little extra time because I'm going to give Mr. Schwartz a final minute. So thank you very much, Mr. Pelosi. You have a minute, Mr. Schwartz. Thank you, Your Honor. I think one of the points counsel tried to make is that there's no fraud perpetrator, but that's essentially the essence of our case is that when the judgment is entered and confirmed by the court, the fraud is in that the father mysteriously vanishes and the son, as Mr. Justice Hamilton indicated, comes like a phoenix after working for his father for 15 years and miraculously the day of the judgment starts his own business. That's the fraud. And as Mr. Justice Eastbrook just said, how are we going to collect? We can't collect because they've been absconded with the money that was rightfully and duly Giannino's money. Now, successorship, that's where the successorship theory comes in, which is anybody who's absconded with money, that's just a fraudulent conveyance, but this is not a fraudulent conveyance action as I understand it. They took money that could have been, that was an asset of Giannino that we could have collected. Are you making a fraudulent conveyance argument? No. I didn't see any in the briefs. It's strictly an alter ego and successorship. Successorship, finding a company to be a successor, and one of the key points with respect to successorship I didn't get to address before is that the successor has to have notice of the preexisting debt because that, the whole purpose is, if it was a true arm's length transaction, the theory is that the successor could then reduce the purchase price to take into consideration those factors. All right, you need to wrap up now. I'm sorry. Thank you, Your Honor. Thank you very much. Thanks to both counsel. We'll take the case under advisement.